# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

**THE BEACHMOOR CONDOMINIUM OWNERS'
ASSOCIATION, INC.**

       **Plaintiff,**

**vs.**                              **CASE NO.:**

**HARTFORD INSURANCE COMPANY
OF THE MIDWEST,**

       **Defendant.**

_____/

## COMPLAINT

**COMES NOW** the Plaintiff, The Beachmoor Condominium Owners Association, Inc. ("Plaintiff"), by and through its undersigned counsel, and hereby sues the Defendant, HARTFORD INSURANCE COMPANY OF THE MIDWEST ("Defendant"), and as grounds therefor states as follows:

## PARTIES

1.    At all times material hereto, Plaintiff was and is an incorporated condominium association governing and owning the condominium building located at 9051 Gulf Shore Drive, Naples, Florida 34108.

2.    The Defendant is a foreign profit corporation, with its principal address at 201 North Illinois Street, 16th Floor, Indianapolis, IN 46204-3250.

3.    The Defendant is an insurance company authorized to conduct business in the State of Florida and is engaged in the business of insurance in Collier County, Florida.

4.    The Defendant is authorized to issue the standard flood insurance policy (SFIP) to property owners in the State of Florida under the National Flood Insurance Program (NFIP) administered by the Federal Emergency Management Agency (FEMA).

## JURISDICTION AND VENUE

5.    This action arises under the *National Flood Insurance Act of 1968* (*"NFIA"*), as amended, 82 Stat. 583, 42 U.S.C. §4001, *et seq.*, pursuant to the insurance contract issued to the Plaintiff.  This action, having arisen under an applicable federal statute, namely, 42 U.S.C. §4072, requires the application of federal law pursuant to the general federal jurisdiction provisions of 28 U.S.C. §1331.

6.    The insured property is situated in the Middle District of Florida and venue is proper in this Court pursuant to 42 U.S.C. §4072 and 44 C.F.R. Pt. 61, App. A(1), Article VII(R).

## FACTUAL ALLEGATIONS

7.      Plaintiff purchased a flood policy of insurance, Policy No. 87046220402019, NFIP Policy Number 8704622040 (the "Policy"), for the policy period of May 1, 2022, through May 1, 2023.    A copy of the Policy issued by Defendant, Hartford Insurance Company of the Midwest, is attached hereto and incorporated herein as **"Exhibit A"**.

8.      The Policy issued to the Plaintiff covered flood damage to the Plaintiff's Building and Contents.

9.      Plaintiff paid all premiums on the Policy and the Policy was in full and continuing force and effect at all relevant times herein.

10.      On or about September 28, 2022, rising water caused the inundation by water of the insured property and the surrounding area causing flood waters to enter the buildings on the insured property.

11.      As a direct and proximate result of the flooding, Plaintiff suffered a direct physical loss to its property located at 9051 Gulf Shore Drive, Naples, Florida 34108.

12.      The damage to Plaintiff's real property was caused by flood and is, therefore, an undisputed covered peril under the Policy.

13.    Plaintiff made timely application for insurance benefits under the Policy and the claim was inspected and adjusted by or on behalf of Defendant.

14.    Defendant assigned Claim No. 397227 to this loss.

15.    Defendant partially indemnified Plaintiff for the damages to the buildings, but a dispute has arisen over the scope and amount of necessary building damage repairs.

16.    Defendant has failed to pay the full benefits due and owing under the Policy for this loss.

17.    All conditions precedent to obtaining payment of said benefits under the Policy from Defendant have been complied with, met, or waived.

18.    In correspondence dated May 29, 2024, Defendant partially denied damages which were clearly owed under the policy.  A true and correct copy of Defendant's May 29, 2024, correspondence is attached as "**Exhibit B**".

19.    Notwithstanding this partial denial, Defendant afforded additional benefits under the policy on March 6, 2025, nearly 2 ½ years after the loss, which totaled $1,848,647.64.

20.    Although Plaintiff remains hopeful its claim can be amicably resolved, due to the Defendant's issuance of a partial denial, Plaintiff is required

to file this lawsuit to recover all benefits due and owing under the policy for its losses.

## COUNT I
### Breach of Contract

21.    Plaintiff realleges and incorporates paragraphs one (1) through fourteen (20) as though fully set forth herein.

22.    Defendant has a duty to indemnify the Plaintiff in the event of a covered cause of loss during the policy period.

23.    Defendant has breached the Policy of insurance by failing to pay the full benefits due and owing under the Policy for a covered cause of loss during the policy period.

24.    Defendant's breach of the Policy of insurance as noted in Paragraph 23 above has proximately caused damage to the Plaintiff.

25.    Plaintiff has been damaged by failing to receive the full benefits available under the Policy for the loss.

26.    Plaintiff is entitled to the full cost of repair of the damage to the property, including but not limited to, repair to the structure, emergency repairs, and all other coverages afforded by the Policy for this loss.

27.     Because of Defendant's refusal to pay the losses sustained by the Plaintiff in full, Plaintiff has retained the services of the undersigned attorney and is obligated to pay a reasonable fee for their services.

28.     Plaintiff demands a trial by jury of all issues so triable as a matter of right.

**WHEREFORE**, Plaintiff, The Beachmoor Condominium Owners Association, Inc., demands a judgment in favor of the Plaintiff against the Defendant for all amounts of damages which it is entitled, including all benefits available under the policy for this loss, and for such other costs, expenses, expert fees, interest, and other relief that this Honorable Court just and proper.

**DATED** this 28th day of May, 2025.

REISING LAW, P.A.
Attorneys for Plaintiff
1900 NW Corporate Blvd, Suite E205
Boca Raton, FL 33431
Telephone: 954-525-6006
Email: pleadings@reisinglaw.com


NICHOLAS J. REISING, JR., ESQ.
Florida Bar No.: 098175

THE HARTFORD

BROWN & BROWN OF FLORIDA INC
6611 ORION DR #201
FORT MYERS, FL 33912

**Agency Phone:**    (239) 278-0278

| | |
|---|---|
| NFIP Policy Number: | 8704622040 |
| Company Policy Number: | 87046220402019 |
| Agent: | BROWN & BROWN OF FLORIDA INC |
| Payor: | INSURED |
| Policy Term: | 05/01/2022 12:01 AM - 05/01/2023 12:01 AM |
| Policy Form: | RCBAP |

**To report a claim visit or call us at:** https://TheHartford.ManageFlood.com (800) 787-5677

# RENEWAL FLOOD INSURANCE POLICY DECLARATIONS
## NATIONAL FLOOD INSURANCE PROGRAM

**DELIVERY ADDRESS**

THE BEACHMOOR CONDOMINIUM OWNERS ASSOCIATION INC

9051 GULF SHORE DR
NAPLES, FL 34108-2337

**INSURED NAME(S) AND MAILING ADDRESS**

THE BEACHMOOR CONDOMINIUM OWNERS ASSOCIATION INC
9051 GULF SHORE DR
NAPLES, FL 34108-2337

**COMPANY MAILING ADDRESS**

Hartford Insurance Company of the Midwest
PO BOX 913385
DENVER, CO 80291-3385

**INSURED PROPERTY LOCATION**

9051 GULF SHORE DR
NAPLES, FL 341082337

| | |
|---|---|
| BUILDING DESCRIPTION: | ENTIRE RESIDENTIAL CONDOMINIUM BUILDING |
| BUILDING DESCRIPTION DETAIL: | N/A |

**RATING INFORMATION**

| | | | |
|---|---|---|---|
| BUILDING OCCUPANCY: | RESIDENTIAL CONDOMINIUM BUILDING | REPLACEMENT COST VALUE: | $15,301,396 |
| NUMBER OF UNITS: | 33 UNITS | DATE OF CONSTRUCTION: | 05/02/1979 |
| PRIMARY RESIDENCE: | NO | | |
| PROPERTY DESCRIPTION: | ELEVATED WITH ENCLOSURE ON POSTS, PILES OR PIERS, 12 FLOOR(S) | CURRENT FLOOD ZONE: | VE |
| | | FIRST FLOOR HEIGHT (FEET): | 1.5 |
| PRIOR NFIP CLAIMS: | 0 CLAIM(S) | FIRST FLOOR HEIGHT METHOD: | FEMA DETERMINED |

**MORTGAGEE / ADDITIONAL INTEREST INFORMATION**

FIRST MORTGAGEE:                                                                    LOAN NO: N/A

SECOND MORTGAGEE:                                                              LOAN NO: N/A

ADDITIONAL INTEREST:                                                            LOAN NO: N/A

DISASTER AGENCY:                                                                    CASE NO: N/A
                                                                                              DISASTER AGENCY:

**RATE CATEGORY — RATING ENGINE**

| | COVERAGE | DEDUCTIBLE |
|---|---|---|
| **BUILDING:** | $8,250,000 | $25,000 |
| **CONTENTS:** | $43,000 | $25,000 |

COVERAGE LIMITATIONS MAY APPLY. SEE YOUR POLICY FORM FOR DETAILS.

Full Risk Premium is subject to change. Your property's NFIP claims history can affect your premium. For questions about your flood insurance policy rating, contact your agent or insurance company. To learn more about your flood risk, please visit FloodSmart.gov/floodcosts.
Mitigation discounts apply if there are approved flood vents and/or machinery & equipment is elevated appropriately.

### COMPONENTS OF TOTAL AMOUNT DUE

| | |
|---|---|
| BUILDING PREMIUM: | $121,331.00 |
| CONTENTS PREMIUM: | $1,356.00 |
| INCREASED COST OF COMPLIANCE (ICC) PREMIUM: | $75.00 |
| MITIGATION DISCOUNT: | ($0.00) |
| COMMUNITY RATING SYSTEM REDUCTION: | ($30,331.00) |
| FULL RISK PREMIUM: | $92,431.00 |
| ANNUAL INCREASE CAP DISCOUNT: | ($62,613.00) |
| STATUTORY DISCOUNTS: | ($0.00) |
| DISCOUNTED PREMIUM: | $29,818.00 |
| RESERVE FUND ASSESSMENT: | $5,367.00 |
| HFIAA SURCHARGE: | $250.00 |
| FEDERAL POLICY FEE: | $1,200.00 |
| PROBATION SURCHARGE: | $0.00 |
| TOTAL ANNUAL PREMIUM: | $36,635.00 |

In witness whereof, we, as officers of the stock Company declared on the Declarations Page, have cause this policy to be executed and attested. If required by state law, this policy shall not be valid unless countersigned by our authorized representative.

*Doug Elliot*
Doug Elliot, President

*Terence Shields*
Terence Shields, Secretary

This declarations page along with the Standard Flood Insurance Policy Form constitutes your flood insurance policy.

Policy issued by:    Hartford Insurance Company of the Midwest

**Zero Balance Due - This Is Not A Bill**

**Insurer NAIC Number:**    37478

File: 18542271        Page 1 of 1

EXHIBIT
A
tabbies

DocID: 155599337

Printed 04/27/2022

National Flood Insurance Program

# Residential Condominium Building Association Policy

## Standard Flood Insurance Policy

F-144 / October 2021

 FEMA

FEDERAL EMERGENCY MANAGEMENT AGENCY, FEDERAL INSURANCE AND MITIGATION ADMINISTRATION

Standard Flood Insurance Policy

# Residential Condominium Building Association Policy

*Please read the policy carefully. The flood insurance provided is subject to limitations, restrictions, and exclusions.*

## I. AGREEMENT

**A.** This policy insures only a residential condominium building in a regular program community. If the community reverts to emergency program status during the policy term and remains as an emergency program community at time of renewal, this policy cannot be renewed.

**B.** The Federal Emergency Management Agency (FEMA) provides flood insurance under the terms of the National Flood Insurance Act of 1968 and its amendments, and Title 44 of the Code of Federal Regulations.

**C.** We will pay you for direct physical loss by or from flood to your insured property if you:

1. Have paid the full amount due (including applicable premiums, surcharges, and fees);
2. Comply with all terms and conditions of this policy; *and*
3. Have furnished accurate information and statements.

**D.** We have the right to review the information you give us at any time and revise your policy based on our review.

**E.** This policy insures only one building. If you own more than one building, coverage will apply to the single building specifically described in the Flood Insurance Application.

**F.** Subject to the exception in Section I.G below, multiple policies with building coverage cannot be issued to insure a single building to one insured or to different insureds, even if issued through different NFIP insurers. Payment for damages may only be made under a single policy for building damages under Coverage A—Building Property.

**G.** A Dwelling Form policy with building coverage may be issued to a unit owner in a condominium building that is also insured under a Residential Condominium Building Association Policy (RCBAP). **However, no more than $250,000 may be paid in combined benefits for a single unit under the Dwelling Form and the RCBAP. We will only pay for damage once. Items of damage paid for under a RCBAP cannot also be claimed under the Dwelling Form policy.**

## II. DEFINITIONS

**A.** In this policy, "you" and "your" refer to the named insured(s) shown on the Declarations Page of this policy. The named insured must also include the building owner if building coverage is purchased. Insured(s) includes: any mortgagee and loss payee named in the Application and Declarations Page, as well as any other mortgagee or loss payee determined to have an existing interest at the time of loss, in the order of precedence. "We," "us," and "our" refer to the insurer.

Some definitions are complex because they are provided as they appear in the law or regulations, or result from court cases.

**B. Flood,** as used in this flood insurance policy, means:

1. A general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties (one of which is your property) from:
   a. Overflow of inland or tidal waters,
   b. Unusual and rapid accumulation or runoff of surface waters from any source,
   c. Mudflow
2. Collapse or subsidence of land along the shore of a lake or similar body of water as a result of erosion or undermining caused by waves or currents of water

exceeding anticipated cyclical levels which result in a flood as defined in B.1.a above.

C. The following are the other key definitions we use in this policy:

1. **Act.** The National Flood Insurance Act of 1968 and any amendments to it.

2. **Actual Cash Value.** The cost to replace an insured item of property at the time of loss, less the value of its physical depreciation.

3. **Application.** The statement made and signed by you or your agent in applying for this policy. The application gives information we use to determine the eligibility of the risk, the kind of policy to be issued, and the correct premium payment. The application is part of this flood insurance policy.

4. **Base Flood.** A flood having a one percent chance of being equaled or exceeded in any given year.

5. **Basement.** Any area of a building, including any sunken room or sunken portion of a room, having its floor below ground level on all sides.

6. **Building.**
   a. A structure with two or more outside rigid walls and a fully secured roof that is affixed to a permanent site;
   b. A manufactured home, also known as a mobile home, is a structure built on a permanent chassis, transported to its site in one or more sections, and affixed to a permanent foundation); or
   c. A travel trailer without wheels, built on a chassis and affixed to a permanent foundation, that is regulated under the community's floodplain management and building ordinances or laws.

   Building does not mean a gas or liquid storage tank, shipping container, or a recreational vehicle, park trailer, or other similar vehicle, except as described in C.6.c above.

7. **Cancellation.** The ending of the insurance coverage provided by this policy before the expiration date.

8. **Condominium.** That form of ownership of one or more buildings in which each unit owner has an undivided interest in common elements.

9. **Condominium Association.** The entity made up of the unit owners responsible for the maintenance and operation of:
   a. Common elements owned in undivided shares by unit owners; and

   b. Other buildings in which the unit owners have use rights; where membership in the entity is a required condition of ownership.

10. **Condominium Building.** A type of building for which the form of ownership is one in which each unit owner has an undivided interest in common elements of the building.

11. **Declarations Page.** A computer-generated summary of information you provided in your application for insurance. The Declarations Page also describes the term of the policy, limits of coverage, and displays the premium and our name. The Declarations Page is a part of this flood insurance policy.

12. **Deductible.** The fixed amount of an insured loss that is your responsibility and that is incurred by you before any amounts are paid for the insured loss under this policy.

13. **Described Location.** The location where the insured building or personal property are found. The described location is shown on the Declarations Page.

14. **Direct Physical Loss By or From Flood.** Loss or damage to insured property, directly caused by a flood. There must be evidence of physical changes to the property.

15. **Elevated Building.** A building that has no basement and that has its lowest elevated floor raised above ground level by foundation walls, shear walls, posts, piers, pilings, or columns.

16. **Emergency Program.** The initial phase of a community's participation in the National Flood Insurance Program. During this phase, only limited amounts of insurance are available under the Act and the regulations prescribed pursuant to the Act.

17. **Federal Policy Fee.** A flat rate charge you must pay on each new or renewal policy to defray certain administrative expenses incurred in carrying out the National Flood Insurance Program.

18. **Improvements.** Fixtures, alterations, installations, or additions comprising a part of the residential condominium building, including improvements in the units.

19. **Mudflow.** A river of liquid and flowing mud on the surface of normally dry land areas, as when earth is carried by a current of water. Other earth movements, such as landslide, slope failure, or a saturated soil mass moving by liquidity down a slope, are not mudflows.

20. **National Flood Insurance Program (NFIP).** The program of flood insurance coverage and floodplain management administered under the Act and applicable Federal regulations in Title 44 of the Code of Federal Regulations, Subchapter B.

21. **Policy.** The entire written contract between you and us. It includes:

   a. This printed form;

   b. The application and Declarations Page;

   c. Any endorsement(s) that may be issued; *and*

   d. Any renewal certificate indicating that coverage has been instituted for a new policy and new policy term. Only one building, which you specifically described in the application, may be insured under this policy.

22. **Pollutants.** Substances that include, but are not limited to, any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned, or reclaimed.

23. **Post-FIRM Building.** A building for which construction or substantial improvement occurred after December 31, 1974, or on or after the effective date of an initial Flood Insurance Rate Map (FIRM), whichever is later.

24. **Probation Surcharge.** A flat charge you must pay on each new or renewal policy issued covering property in a community the NFIP has placed on probation under the provisions of 44 CFR 59.24.

25. **Regular Program.** The final phase of a community's participation in the National Flood Insurance Program. In this phase, a Flood Insurance Rate Map is in effect and full limits of coverage are available under the Act and the regulations prescribed pursuant to the Act.

26. **Residential Condominium Building.** A building, condominium, containing one or more family units and in which at least 75 percent of the floor area is residential.

27. **Special Flood Hazard Area (SFHA).** An area having special flood or mudflow, and/or flood-related erosion hazards, and shown on a Flood Hazard Boundary Map or Flood Insurance Rate Map as Zone A, AO, A1–A30, AE, A99, AH, AR, AR/A, AR/AE, AR/AH, AR/AO, AR/A1–A30, V1–V30, VE, or V.

28. **Unit.** A single-family residential space in a residential condominium building.

29. **Valued Policy.** A policy in which the insured and the insurer agree on the value of the property insured, that value being payable in the event of a total loss. The Standard Flood Insurance Policy is not a valued policy.

---

## III. PROPERTY INSURED

### A. Coverage A—Building Property

We insure against direct physical loss by or from flood to:

1. The residential condominium building described on the Declarations Page at the described location, including all units within the building and the improvements within the units.

2. We also insure such building property for a period of 45 days at another location, as set forth in III.C.2.b, Property Removed to Safety.

3. Additions and extensions attached to and in contact with the building by means of a rigid exterior wall, a solid load-bearing interior wall, a stairway, an elevated walkway, or a roof. At your option, additions and extensions connected by any of these methods may be separately insured. Additions and extensions attached to and in contact with the building by means of a common interior wall that is not a solid load-bearing wall are always considered part of the building and cannot be separately insured.

4. The following fixtures, machinery and equipment, including its units, which are insured under Coverage A only:

   a. Awnings and canopies;

   b. Blinds;

   c. Carpet permanently installed over unfinished flooring;

   d. Central air conditioners;

   e. Elevator equipment;

   f. Fire extinguishing apparatus;

   g. Fire sprinkler systems;

   h. Walk-in freezers;

   i. Furnaces;

   j. Light fixtures;

   k. Outdoor antennas and aerials fastened to buildings;

   l. Permanently installed cupboards, bookcases, paneling, and wallpaper;

   m. Pumps and machinery for operating pumps;

   n. Ventilating equipment;

   o. Wall mirrors, permanently installed; *and*

   p. In the units within the building, installed:

      (1) Built-in dishwashers;

      (2) Built-in microwave ovens;

      (3) Garbage disposal units;

      (4) Hot water heaters, including solar water heaters;

      (5) Kitchen cabinets;

  (6) Plumbing fixtures;

  (7) Radiators;

  (8) Ranges;

  (9) Refrigerators; *and*

  (10) Stoves.

5. Materials and supplies to be used for construction, alteration or repair of the insured building while the materials and supplies are stored in a fully enclosed building at the described location or on an adjacent property.

6. A building under construction, alteration, or repair at the described location.

## a. If the structure is not yet walled or roofed as described in the definition for building (see II.C.6.a.) then coverage applies:

### (1) Only while such work is in progress; *or*

### (2) If such work is halted, only for a period of up to 90 continuous days thereafter.

## b. However, coverage does not apply until the building is walled and roofed if the lowest floor, including the basement floor, of a non-elevated building or the lowest elevated floor of an elevated building is:

### (1) Below the base flood elevation in Zones AH, AE, A1–30, AR, AR/AE, AR/AH, AR/A1–30, AR/A, AR/AO; *or*

### (2) Below the base flood elevation adjusted to include the effect of wave action in Zones VE or V1–30.

The lowest floor level is based on the bottom of the lowest horizontal structural member of the floor in Zones VE or V1–V30 or top of the floor in Zones AH, AE, A1–A30, AR, AR/AE, AR/AH, AR/A1–A30, AR/A, and AR/AO.

7. A manufactured home or a travel trailer, as described in the II.C.6. If the manufactured home is in a special flood hazard area, it must be anchored in the following manner at the time of the loss:

 a. By over-the-top or frame ties to ground anchors; *or*

 b. In accordance with the manufacturer's specifications; *or*

 c. In compliance with the community's floodplain management requirements unless it has been continuously insured by the NFIP at the same described location since September 30, 1982.

## 8. Items of property below the lowest elevated floor of an elevated post-FIRM building located in zones A1–A30, AE, AH, AR, AR/A, AR/AE, AR/AH, AR/A1–A30, V1–V30, or VE, or in a basement, regardless of the zone. Coverage is limited to the following:

 a. Any of the following items, if installed in their functioning locations and, if necessary for operation, connected to a power source:

  (1) Central air conditioners;

  (2) Cisterns and the water in them;

  (3) Drywall for walls and ceilings in a basement and the cost of labor to nail it, unfinished and unfloated and not taped, to the framing;

  (4) Electrical junction and circuit breaker boxes;

  (5) Electrical outlets and switches;

  (6) Elevators, dumbwaiters, and related equipment, except for related equipment installed below the base flood elevation after September 30, 1987;

  (7) Fuel tanks and the fuel in them;

  (8) Furnaces and hot water heaters;

  (9) Heat pumps;

  (10) Nonflammable insulation in a basement;

  (11) Pumps and tanks used in solar energy systems;

(12) Stairways and staircases attached to the building, not separated from it by elevated walkways;

(13) Sump pumps;

(14) Water softeners and the chemicals in them, water filters, and faucets installed as an integral part of the plumbing system;

(15) Well water tanks and pumps;

(16) Required utility connections for any item in this list; *and*

(17) Footings, foundations, posts, pilings, piers, or other foundation walls and anchorage systems required to support a building.

b. Clean-up.

**B. Coverage B—Personal Property**

1. If you have purchased personal property coverage, we insure, subject to B.2 and B.3 below, against direct physical loss by or from flood to personal property that is inside the fully enclosed insured building and is:

a. Owned by the unit owners of the condominium association in common, meaning property in which each unit owner has an undivided ownership interest; *or*

b. Owned solely by the condominium association and used exclusively in the conduct of the business affairs of the condominium association.

2. We also insure such personal property for 45 days while stored at a temporary location, as set forth in III.C.2.b, Property Removed to Safety.

3. Coverage for personal property includes the following property, subject to B.1. above, which is insured under Coverage B only:

a. Air conditioning units, portable or window type;

b. Carpets, not permanently installed, over unfinished flooring;

c. Carpets over finished flooring;

d. Clothes washers and dryers;

e. "Cook-out" grills;

f. Food freezers, other than walk-in, and food in any freezer;

g. Outdoor equipment and furniture stored inside the insured building;

h. Ovens and the like; *and*

i. Portable microwave ovens and portable dishwashers.

**4. Coverage for items of property in a building enclosure below the lowest elevated floor of an elevated post-FIRM building located in zones A1–A30, AE, AH, AR, AR/A, AR/AE, AR/AH, AR/A1–A30, V1–V30, or VE, or in a basement, regardless of the zone, is limited to the following items, if installed in their functioning locations and, if necessary for operation, connected to a power source:**

a. Air conditioning units, portable or window type;

b. Clothes washers and dryers; *and*

c. Food freezers, other than walk-in, and food in any freezer.

**5. Special Limits. We will pay no more than $2,500 for any one loss to one or more of the following kinds of personal property:**

a. Artwork, photographs, collectibles, or memorabilia, including but not limited to, porcelain or other figures, and sports cards;

b. Rare books or autographed items;

c. Jewelry, watches, precious and semi-precious stones, or articles of gold, silver, or platinum;

d. Furs or any article containing fur which represents its principal value.

**6. We will pay only for the functional value of antiques.**

**C. Coverage C—Other Coverages**

1. **Debris Removal**

a. We will pay the expense to remove non-owned debris that is on or in insured property and debris of insured property anywhere.

b. If you or a member of your household perform the removal work, the value of your work will be based on the Federal minimum wage.

c. This coverage does not increase the Coverage A or Coverage B limit of liability.

2. **Loss Avoidance Measures**

   a. **Sandbags, Supplies, and Labor**

      (1) We will pay up to $1,000 for costs you incur to protect the insured building from a flood or imminent danger of flood, for the following:

         (a) Your reasonable expenses to buy:

            (i) Sandbags, including sand to fill them;

            (ii) Fill for temporary levees;

            (iii) Pumps; *and*

            (iv) Plastic sheeting and lumber used in connection with these items.

         (b) The value of work, at the Federal minimum wage, that you perform.

      (2) This coverage for Sandbags, Supplies and Labor only applies if damage to insured property by or from flood is imminent and the threat of flood damage is apparent enough to lead a person of common prudence to anticipate flood damage. One of the following must also occur:

         (a) A general and temporary condition of flooding in the area near the described location must occur, even if the flood does not reach the building; *or*

         (b) A legally authorized official must issue an evacuation order or other civil order for the community in which the building is located calling for measures to preserve life and property from the peril of flood.

   b. **Property Removed to Safety**

      (1) We will pay up to $1,000 for the reasonable expenses you incur to move insured property to a place other than the described location that contains the property in order to protect it from flood or the imminent danger of flood. Reasonable expenses include the value of work, at the Federal minimum wage, you or a member of your household perform.

      (2) If you move insured property to a location other than the described location that contains the property, in order to protect it from flood or the imminent danger of flood, we will cover such property while at that location for a period of 45 consecutive days from the date you begin to move it there.

      (3) The personal property that is moved must be placed in a fully enclosed building or otherwise reasonably protected from the elements. Any property removed, including a moveable home described in II.6.b and c,

must be placed above ground level or outside of the special flood hazard area

      (4) This coverage does not increase the Coverage A or Coverage B limit of liability.

D. **Coverage D—Increased Cost of Compliance**

   1. **General.**

      This policy pays you to comply with a State or local floodplain management law or ordinance affecting repair or reconstruction of a building suffering flood damage. Compliance activities eligible for payment are: elevation, floodproofing, relocation, or demolition (or any combination of these activities) of your building. Eligible floodproofing activities are limited to:

      a. Non-residential buildings.

      b. Residential buildings with basements that satisfy FEMA's standards published in the Code of Federal Regulations [44 CFR 60.6 (b) or (c)].

   2. **Limit of Liability.**

      We will pay you up to $30,000 under this Coverage D (Increased Cost of Compliance), which only applies to policies with building coverage (Coverage A). Our payment of claims under Coverage D is in addition to the amount of coverage which you selected on the application and which appears on the Declarations Page. But, the maximum you can collect under this policy for both Coverage A—Building Property and Coverage D—Increased Cost of Compliance cannot exceed the maximum permitted under the Act. We do not charge a separate deductible for a claim under Coverage D.

   3. **Eligibility.**

      a. A building insured under Coverage A (Building Property) sustaining a loss caused by a flood as defined by this policy must:

         (1) Be a "repetitive loss building." A repetitive loss building is one that meets the following conditions:

            (a) The building is insured by a contract of flood insurance issued under the NFIP.

            (b) The building has suffered flood damage on two occasions during a 10-year period which ends on the date of the second loss.

            (c) The cost to repair the flood damage, on average, equaled or exceeded 25 percent of the market value of the building at the time of each flood loss.

            (d) In addition to the current claim, the NFIP must have paid the previous qualifying claim, and the State or community must

have a cumulative, substantial damage provision or repetitive loss provision in its floodplain management law or ordinance being enforced against the building; or

(2) Be a building that has had flood damage in which the cost to repair equals or exceeds 50 percent of the market value of the building at the time of the flood. The State or community must have a substantial damage provision in its floodplain management law or ordinance being enforced against the building.

b. This Coverage D pays you to comply with State or local floodplain management laws or ordinances that meet the minimum standards of the National Flood Insurance Program found in the Code of Federal Regulations at 44 CFR 60.3. We pay for compliance activities that exceed those standards under these conditions:

(1) 3.a.1 above.

(2) Elevation or floodproofing in any risk zone to preliminary or advisory base flood elevations provided by FEMA which the State or local government has adopted and is enforcing for flood-damaged buildings in such areas. (This includes compliance activities in B, C, X, or D zones which are being changed to zones with base flood elevations. This also includes compliance activities in zones where base flood elevations are being increased, and a flood-damaged building must comply with the higher advisory base flood elevation.) Increased Cost of Compliance coverage does not apply to situations in B, C, X, or D zones where the community has derived its own elevations and is enforcing elevation or floodproofing requirements for flood-damaged buildings to elevations derived solely by the community.

(3) Elevation or floodproofing above the base flood elevation to meet State or local "freeboard" requirements, i.e., that a building must be elevated above the base flood elevation.

c. Under the minimum NFIP criteria at 44 CFR 60.3(b)(4), States and communities must require the elevation or floodproofing of buildings in unnumbered A zones to the base flood elevation where elevation data is obtained from a Federal, State, or other source. Such compliance activities are also eligible for Coverage D.

d. Coverage D will pay for the incremental cost, after demolition or relocation, of elevating or floodproofing a building during its rebuilding

at the same or another site to meet State or local floodplain management laws or ordinances, subject to Exclusion D.5.g below relating to improvements.

e. Coverage D will pay to bring a flood-damaged building into compliance with State or local floodplain management laws or ordinances even if the building had received a variance before the present loss from the applicable floodplain management requirements.

4. **Conditions.**

a. When a building insured under Coverage A—Building Property sustains a loss caused by a flood, our payment for the loss under this Coverage D will be for the increased cost to elevate, floodproof, relocate, or demolish (or any combination of these activities) caused by the enforcement of current State or local floodplain management ordinances or laws. Our payment for eligible demolition activities will be for the cost to demolish and clear the site of the building debris or a portion thereof caused by the enforcement of current State or local floodplain management ordinances or laws. Eligible activities for the cost of clearing the site will include those necessary to discontinue utility service to the site and ensure proper abandonment of on-site utilities.

b. When the building is repaired or rebuilt, it must be intended

for the same occupancy as the present building unless otherwise required by current floodplain management ordinances or laws.

5. **Exclusions.**

Under this Coverage D (Increased Cost of Compliance) we will not pay for:

a. The cost to comply with any floodplain management law or ordinance in communities participating in the Emergency Program.

b. The cost associated with enforcement of any ordinance or law that requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

c. The loss in value to any insured building due to the requirements of any ordinance or law.

d. The loss in residual value of the undamaged portion of a building demolished as a consequence of enforcement of any State or local floodplain management law or ordinance.

e. Any Increased Cost of Compliance under this Coverage D:

(1) Until the building is elevated, floodproofed, demolished, or relocated on the same or to another premises; *and*

(2) Unless the building is elevated, floodproofed, demolished, or relocated as soon as reasonably possible after the loss, not to exceed two years.

f. Any code upgrade requirements, e.g., plumbing or electrical wiring, not specifically related to the State or local floodplain management law or ordinance.

g. Any compliance activities needed to bring additions or improvements made after the loss occurred into compliance with State or local floodplain management laws or ordinances.

h. Loss due to any ordinance or law that you were required to comply with before the current loss.

i. Any rebuilding activity to standards that do not meet the NFIP's minimum requirements. This includes any situation where the insured has received from the State or community a variance in connection with the current flood loss to rebuild the property to an elevation below the base flood elevation.

j. Increased Cost of Compliance for a garage or carport.

k. Any building insured under an NFIP Group Flood Insurance Policy.

l. Assessments made by a condominium association on individual condominium unit owners to pay increased costs of repairing commonly owned buildings after a flood in compliance with State or local floodplain management ordinances or laws.

6. **Other Provisions.**

   a. Increased Cost of Compliance coverage will not be included in the calculation to determine whether coverage meets the coinsurance requirement for replacement cost coverage under Art. VIII.R. ("Loss Settlement").

   b. All other conditions and provisions of this policy apply.

---

## IV. PROPERTY NOT INSURED

We do not insure any of the following:

1. Personal property not inside a building;

2. A building, and personal property in it, located entirely in, on, or over water or seaward of mean high tide if it was constructed or substantially improved after September 30, 1982;

3. Open structures, including a building used as a boathouse or any structure or building into which boats are floated, and personal property located in, on, or over water;

4. Recreational vehicles other than travel trailers described in the Definitions section (see II.C.6.c) whether affixed to a permanent foundation or on wheels;

5. Self-propelled vehicles or machines, including their parts and equipment. However, we do cover self-propelled vehicles or machines not licensed for use on public roads that are:

   a. Used mainly to service the described location *or*

   b. Designed and used to assist handicapped persons, while the vehicles or machines are inside a building at the described location;

6. Land, land values, lawns, trees, shrubs, plants, growing crops, or animals;

7. Accounts, bills, coins, currency, deeds, evidences of debt, medals, money, scrip, stored value cards, postage stamps, securities, bullion, manuscripts, or other valuable papers;

8. Underground structures and equipment, including wells, septic tanks, and septic systems;

9. Those portions of walks, walkways, decks, driveways, patios, and other surfaces, all whether protected by a roof or not, located outside the perimeter, exterior walls of the insured building;

10. Containers, including related equipment, such as, but not limited to, tanks containing gases or liquids;

11. Buildings and all their contents if more than 49 percent of the actual cash value of the building is below ground, unless the lowest level is at or above the base flood elevation and is below ground by reason of earth having been used as insulation material in conjunction with energy efficient building techniques;

12. Fences, retaining walls, sea-walls, bulkheads, wharves, piers, bridges, and docks;

13. Aircraft or watercraft, or their furnishings and equipment;

14. Hot tubs and spas that are not bathroom fixtures, and swimming pools, and their equipment such as, but not limited to, heaters, filters, pumps, and pipes, wherever located;

15. Property not eligible for flood insurance pursuant to the provisions of the Coastal Barrier Resources Act and the Coastal Barrier Improvements Act of 1990 and amendments to these Acts;

16. Personal property used in connection with any incidental commercial occupancy or use of the building.

---

### V. EXCLUSIONS

---

A. We only pay for "direct physical loss by or from flood," which means that we do not pay you for:

1. Loss of revenue or profits;

2. Loss of access to the insured property or described location;

3. Loss of use of the insured property or described location;

4. Loss from interruption of business or production;

5. Any additional living expenses incurred while the insured building

is being repaired or is unable to be occupied for any reason;

6. The cost of complying with any ordinance or law requiring or regulating the construction, demolition, remodeling, renovation, or repair of property, including removal of any resulting debris. This exclusion does not apply to any eligible activities we describe in Coverage D—Increased Cost of Compliance; *or*

7. Any other economic loss you suffer.

B. **Flood in Progress.** If this policy became effective as of the time of a loan closing, as provided by 44 CFR 61.11(b), we will not pay for a loss caused by a flood that is a continuation of a flood that existed prior to coverage becoming effective. In all other circumstances, we will not pay for a loss caused by a flood that is a continuation of a flood that existed on or before the day you submitted the application for coverage under this policy and the correct premium. We will determine the date of application using 44 CFR 611.11(f).

C. We do not insure for loss to property caused directly by earth movement even if the earth movement is caused by flood. Some examples of earth movement that we do not cover are:

1. Earthquake;

2. Landslide;

3. Land subsidence;

4. Sinkholes;

5. Destabilization or movement of land that results from accumulation of water in subsurface land areas; *or*

6. Gradual erosion.

We do, however, pay for losses from mudflow and land subsidence as a result of erosion that are specifically covered under our definition of flood (see II.B.1.c and II.B.2).

D. We do not insure for direct physical loss caused directly or indirectly by:

1. The pressure or weight of ice;

2. Freezing or thawing;

3. Rain, snow, sleet, hail, or water spray;

4. Water, moisture, mildew, or mold damage that results primarily from any condition:

   a. Substantially confined to the insured building; *or*

b. That is within your control including, but not limited to:

   (1) Design, structural, or mechanical defects;

   (2) Failures, stoppages, or breakage of water or sewer lines, drains, pumps, fixtures, or equipment; *or*

   (3) Failure to inspect and maintain the property after a flood recedes;

5. Water or water-borne material that:

  a. Backs up through sewers or drains;

  b. Discharges or overflows from a sump, sump pump or related equipment; *or*

  c. Seeps or leaks on or through the insured property;

  d. unless there is a flood in the area and the flood is the proximate cause of the sewer or drain backup, sump pump discharge or overflow, or the seepage of water;

6. The pressure or weight of water unless there is a flood in the area and the flood is the proximate cause of the damage from the pressure or weight of water;

7. Power, heating, or cooling failure unless the failure results from direct physical loss by or from flood to power, heating, or cooling equipment on the described location;

8. Theft, fire, explosion, wind, or windstorm;

9. Anything you or your agents do or conspire to do to cause loss by flood deliberately; *or*

10. Alteration of the insured property that significantly increases the risk of flooding.

E. We do not insure for loss to any building or personal property located on land leased from the Federal Government, arising from or incident to the flooding of the land by the Federal Government, where the lease expressly holds the Federal Government harmless under flood insurance issued under any Federal Government program.

F. We do not pay for the testing for or monitoring of pollutants unless required by law or ordinance.

## VI. DEDUCTIBLES

**A.** When a loss is insured under this policy, we will pay only that part of the loss that exceeds your deductible amount, subject to the limit of liability that applies. The deductible amount is shown on the Declarations Page.

However, when a building under construction, alteration, or repair does not have at least two rigid exterior walls and a fully secured roof at the time of loss, your deductible amount will be two times the deductible that would otherwise apply to a completed building.

**B.** In each loss from flood, separate deductibles apply to the building and personal property insured by this policy.

**C.** No deductible applies to:

1. III.C.2. Loss Avoidance Measures; *or*
2. III.D. Increased Cost of Compliance.

## VII. COINSURANCE

**A.** This Coinsurance Section applies only to coverage on the building.

**B. We will impose a penalty on loss payment unless the amount of insurance applicable to the damaged building is:**

1. **At least 80 percent of its replacement cost; *or***
2. **The maximum amount of insurance available for that building under the NFIP, whichever is less.**

**C.** If the actual amount of insurance on the building is less than the required amount in accordance with the terms of VII.B above, then loss payment is determined as follows (subject to all other relevant conditions in this policy, including those pertaining to valuation, adjustment, settlement, and payment of loss):

1. Divide the actual amount of insurance carried on the building by the required amount of insurance.
2. Multiply the amount of loss, before application of the deductible, by the figure determined in C.1 above.
3. Subtract the deductible from the figure determined in C.2 above.

We will pay the amount determined in C.3 above, or the amount of insurance carried, whichever is less. The amount of insurance carried, if in excess of the applicable maximum amount of insurance available under the NFIP, is reduced accordingly.

**EXAMPLES**

**Example #1** (Inadequate Insurance)

Replacement value of the building – $250,000

Required amount of insurance – $200,000

    (80 percent of replacement value of $250,000)

Actual amount of insurance carried – $180,000

Amount of the loss -- $150,000

Deductible -- $500

Step 1: 180,000 / 200,000 = .90

    (90 percent of what should be carried.)

Step 2: $150,000 × .90 = 135,000

Step 3: $135,000 – $500 = 134,500

We will pay no more than $134,500. The remaining $15,500 is not covered due to the coinsurance penalty ($15,000) and application of the deductible ($500).

**Example #2** (Adequate Insurance)

Replacement value of the building – $500,000

Required amount of insurance – $400,000

    (80 percent of replacement value of $500,000)

Actual amount of insurance carried – $400,000

Amount of the loss – $200,000

Deductible – $500

In this example there is no coinsurance penalty, because the actual amount of insurance carried meets the required amount. We will pay no more than $199,500 ($200,000 amount of loss minus the $500 deductible).

**D.** In calculating the full replacement cost of a building:

1. The replacement cost value of any insured building property will be included;
2. The replacement cost value of any building property not insured under this policy will not be included; *and*
3. Only the replacement cost value of improvements installed by the condominium association will be included.

## VIII. GENERAL CONDITIONS

### A. Pair and Set Clause

In case of loss to an article that is part of a pair or set, we will have the option of paying you:

1. An amount equal to the cost of replacing the lost, damaged, or destroyed article, minus its depreciation, or

2. The amount that represents the fair proportion of the total value of the pair or set that the lost, damaged, or destroyed article bears to the pair or set.

### B. Other Insurance

1. If a loss insured by this policy is also insured by other insurance that includes flood coverage not issued under the Act, we will not pay more than the amount of insurance that you are entitled to for lost, damaged, or destroyed property insured under this policy subject to the following:

   a. We will pay only the proportion of the loss that the amount of insurance that applies under this policy bears to the total amount of insurance covering the loss, unless VIII.B.1.b or c immediately below applies.

   b. If the other policy has a provision stating that it is excess insurance, this policy will be primary.

   c. This policy will be primary (but subject to its own deductible) up to the deductible in the other flood policy (except another policy as described in VIII.B.1.b. above). When the other deductible amount is reached, this policy will participate in the same proportion that the amount of insurance under this policy bears to the total amount of both policies, for the remainder of the loss.

2. If there is a National Flood Insurance Program flood insurance policy in the name of a unit owner that covers the same loss as this policy, then this policy will be primary.

### C. Amendments, Waivers, Assignment

This policy cannot be changed, nor can any of its provisions be waived, without the express written consent of the Federal Insurance Administrator. No action we take under the terms of this policy constitutes a waiver of any of our rights. You may assign this policy in writing when you transfer title of your property to someone else except under these conditions:

1. When this policy insures only personal property; or

2. When this policy insures a building under construction.

### D. Insufficient Premium or Rating Information

1. **Applicability.** The following provisions apply to all instances where the premium paid on this policy is insufficient or where the rating information is insufficient, such as where an Elevation Certificate is not provided.

2. **Reforming the Policy with Reduced Coverage.** Except as otherwise provided in VIII.D.1 and VIII.D.4, if the premium we received from you was not sufficient to buy the kinds and amounts of coverage you requested, we will provide only the kinds and amounts of coverage that can be purchased for the premium payment we received.

a. For the purpose of determining whether your premium payment is sufficient to buy the kinds and amounts of coverage you requested, we will first deduct the costs of all applicable fees and surcharges.

b. If the amount paid, after deducting the costs of all applicable fees and surcharges, is not sufficient to buy any amount of coverage, your payment will be refunded. Unless the policy is reformed to increase the coverage amount to the amount originally requested pursuant to VIII.E.3, this policy will be cancelled, and no claims will be paid under this policy.

c. Coverage limits on the reformed policy will be based upon the amount of premium submitted per type of coverage, but will not exceed the amount originally requested.

3. **Discovery of Insufficient Premium or Rating Information.** If we discover that your premium payment was not sufficient to buy the requested amount of coverage, the policy will be reformed as described in VIII.D.2. You have the option of increasing the amount of coverage resulting from this reformation to the amount you requested as follows:

a. **Insufficient Premium.** If we discover that your premium payment was not sufficient to buy the requested amount of coverage, we will send you, and any mortgagee or trustee known to us, a bill for the required additional premium for the current policy term (or that portion of the current policy term following any endorsement changing the amount of coverage). If it is discovered that the initial amount charged to you for any fees or surcharges is incorrect, the difference will be added or deducted, as applicable, to the total amount in this bill.

(1) If you or the mortgagee or trustee pay the additional amount due within 30 days

from the date of our bill, we will reform the policy to increase the amount of coverage to the originally requested amount, effective to the beginning of the current policy term (or subsequent date of any endorsement changing the amount of coverage).

(2) If you or the mortgagee or trustee do not pay the additional amount due within 30 days of the date of our bill, any flood insurance claim will be settled based on the reduced amount of coverage.

(3) As applicable, you have the option of paying all or part of the amount due out of a claim payment based on the originally requested amount of coverage.

b. **Insufficient Rating Information.** If we determine that the rating information we have is insufficient and prevents us from calculating the additional premium, we will ask you to send the required information. You must submit the information within 60 days of our request.

(1) If we receive the information within 60 days of our request, we will determine the amount of additional premium for the current policy term and follow the procedure in VIII.D.3.a above.

(2) If we do not receive the information within 60 days of our request, no claims will be paid until the requested information is provided. Coverage will be limited to the amount of coverage that can be purchased for the payments we received, as determined when the requested information is provided.

4. **Coverage Increases.** If we do not receive the amount requested in VIII.D.3.a or VIII.D.4.a, or the additional information requested in VIII.D.3.b or VIII.D.4.b by the date it is due, the amount of coverage under this policy can only be increased by endorsement subject to the appropriate waiting period. However, no coverage increases will be allowed until you have provided the information requested in VIII.D.3.b or VIII.D.4.b.

**5. Falsifying Information.** However, if we find that you or your agent intentionally did not tell us, or falsified, any important fact or circumstance or did anything fraudulent relating to this insurance, the provisions of IX.A apply.

**E. Policy Renewal**

1. This policy will expire at 12:01 a.m. on the last day of the policy term.

2. We must receive the payment of the appropriate renewal premium within 30 days of the expiration date.

3. If we find, however, that we did not place your renewal notice into the U.S. Postal Service, or if we did mail it, we made a mistake, e.g., we used an incorrect, incomplete, or illegible address, which delayed its delivery to you before the due date for the renewal premium, then we will follow these procedures:

   a. If you or your agent notified us, not later than one year after the date on which the payment of the renewal premium was due, of non-receipt of a renewal notice before the due date for the renewal premium, and we determine that the circumstances in the preceding paragraph apply, we will mail a second bill providing a revised due date, which will be 30 days after the date on which the bill is mailed.

   b. If we do not receive the premium requested in the second bill by the revised due date, then we will not renew the policy. In that case, the policy will remain as an expired policy as of the expiration date shown on the Declarations Page.

   c. In connection with the renewal of this policy, we may ask you during the policy term to recertify, on a Recertification Questionnaire that we will provide you, the rating information used to rate your most recent application for or renewal of insurance.

**F. Conditions Suspending or Restricting Insurance**

We are not liable for loss that occurs while there is a hazard that is increased by any means within your control or knowledge.

**G. Requirements in Case of Loss**

In case of a flood loss to insured property, you must:

1. Give prompt written notice to us;

2. As soon as reasonably possible, separate the damaged and undamaged property, putting it in the best possible order so that we may examine it;

3. Prepare an inventory of damaged property showing the quantity, description, actual cash value, and amount of loss. Attach all bills, receipts, and related documents;

4. Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information:

   a. The date and time of loss;

   b. A brief explanation of how the loss happened;

   c. Your interest (for example, "owner") and the interest, if any, of others in the damaged property;

   d. Details of any other insurance that may cover the loss;

e. Changes in title or occupancy of the insured property during the term of the policy;

f. Specifications of damaged buildings and detailed repair estimates;

g. Names of mortgagees or any-one else having a lien, charge, or claim against the insured property;

h. Details about who occupied any insured building at the time of loss and for what purpose; *and*

i. The inventory of damaged personal property described in G.3 above.

5. In completing the proof of loss, you must use your own judgment concerning the amount of loss and justify that amount.

6. You must cooperate with the adjuster or representative in the investigation of the claim.

7. The insurance adjuster whom we hire to investigate your claim may furnish you with a proof of loss form, and she or he may help you complete it. However, this is a matter of courtesy only, and you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it.

8. We have not authorized the adjuster to approve or disapprove claims or to tell you whether we will approve your claim.

9. At our option, we may accept the adjuster's report of the loss instead of your proof of loss. The adjuster's report will include information about your loss and the damages you sustained. You must sign the adjuster's report. At our option, we may require you to swear to the report.

**H. Our Options After a Loss**

Options we may, in our sole discretion, exercise after loss include the following:

1. At such reasonable times and places that we may designate, you must:

   a. Show us or our representative the damaged property;

   b. Submit to examination under oath, while not in the presence of another insured, and sign the same; *and*

   c. Permit us to examine and make extracts and copies of:

      (1) Any policies of property insurance insuring you against loss and the deed establishing your ownership of the insured real property;

      (2) Condominium association documents including the Declarations of the condominium, its Articles of Association or Incorporation, Bylaws, and rules and regulations; *and*

      (3) All books of accounts, bills, invoices and other vouchers, or certified copies pertaining to the damaged property if the originals are lost.

2. We may request, in writing, that you furnish us with a complete inventory of the lost, damaged, or destroyed property, including:

   a. Quantities and costs;

   b. Actual cash values or replacement cost (whichever is appropriate);

   c. Amounts of loss claimed;

   d. Any written plans and specifications for repair of the damaged property that you can reasonably make available to us; *and*

   e. Evidence that prior flood damage has been repaired.

3. If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may:

   a. Repair, rebuild, or replace any part of the lost, damaged, or destroyed property with material or property of like kind and quality or its functional equivalent; *and*

   b. Take all or any part of the damaged property at the value that we agree upon or its appraised value.

### I. No Benefit to Bailee

No person or organization, other than you, having custody of insured property will benefit from this insurance.

### J. Loss Payment

1. We will adjust all losses with you. We will pay you unless some other person or entity is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss (or within 90 days after the insurance adjuster files the adjuster's report signed and sworn to by you in lieu of a proof of loss) and:

   a. We reach an agreement with you;

   b. There is an entry of a final judgment; *or*

   c. There is a filing of an appraisal award with us, as provided in VIII.M.

2. If we reject your proof of loss in whole or in part you may:

   a. Accept our denial of your claim;

   b. Exercise your rights under this policy; *or*

   c. File an amended proof of loss as long as it is filed within 60 days of the date of the loss.

### K. Abandonment

You may not abandon damaged or undamaged insured property to us.

### L. Salvage

We may permit you to keep damaged insured property after a loss, and we will reduce the amount of the loss proceeds payable to you under the policy by the value of the salvage.

### M. Appraisal

If you and we fail to agree on the actual cash value or, if applicable, replacement cost of the damaged property so as to determine the amount of loss, then either may demand an appraisal of the loss. In this event, you and we will each choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the insured property is located. The appraisers will separately state the actual cash value, the replacement cost, and the amount of loss to each item. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of actual cash value and loss, or if it applies, the replacement cost and loss.

Each party will:

1. Pay its own appraiser; *and*

2. Bear the other expenses of the appraisal and umpire equally.

**N. Mortgage Clause**

1. The word "mortgagee" includes trustee.

2. Any loss payable under Coverage A—Building Property will be paid to any mortgagee of whom we have actual notice, as well as any other mortgagee or loss payee determined to exist at the time of loss, and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

3. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a. Notifies us of any change in the ownership or occupancy, or substantial change in risk of which the mortgagee is aware;

   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; *and*

   c. Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so.

4. All terms of this policy apply to the mortgagee.

5. The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building.

6. If we decide to cancel or not renew this policy, it will continue in effect for the benefit of the mortgagee only for 30 days after we notify the mortgagee of the cancellation or non-renewal.

7. If we pay the mortgagee for any loss and deny payment to you, we are subrogated to all the rights of the mortgagee granted under the mortgage on the property. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**O. Suit Against Us**

You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy. If you do sue, you must start the suit within one year of the date of the written denial of all or part of the claim, and you must file the suit in the United States District Court of the district in which the insured property was located at the time of loss. This requirement applies to any claim that

you may have under this policy and to any dispute that you may have arising out of the handling of any claim under the policy.

**P. Subrogation**

Whenever we make a payment for a loss under this policy, we are subrogated to your right to recover for that loss from any other person. That means that your right to recover for a loss that was partly or totally caused by someone else is automatically transferred to us, to the extent that we have paid you for the loss. We may require you to acknowledge this transfer in writing. **After the loss, you may not give up our right to recover this money or do anything that would prevent us from recovering it. If you make any claim against any person who caused your loss and recover any money, you must pay us back first before you may keep any of that money.**

**Q. Continuous Lake Flood**

1. If an insured building has been flooded by rising lake waters continuously for 90 days or more and it appears reasonably certain that a continuation of this flooding will result in an insured loss to the insured building equal to or greater than the building policy limits plus the deductible or the maximum payable under the policy for any one building loss, we will pay you the lesser of these two amounts without waiting for the further damage to occur if you sign a release agreeing:

   a. To make no further claim under this policy;

   b. Not to seek renewal of this policy;

   c. Not to apply for any flood insurance under the Act for property at the described location;

   d. Not to seek a premium refund for current or prior terms.

   If the policy term ends before the insured building has been flooded continuously for 90 days, the provisions of this paragraph Q.1 will apply when the insured building suffers a covered loss before the policy term ends.

2. If your insured building is subject to continuous lake flooding from a closed basin lake, you may elect to file a claim under either paragraph Q.1 above or this paragraph Q.2 (A "closed basin lake" is a natural lake from which water leaves primarily through evaporation and whose surface area now exceeds or has exceeded one square mile at any time in the recorded past. Most of the nation's closed basin lakes are in the western half of the United States where annual evaporation exceeds annual precipitation and where lake levels and surface areas are subject to considerable

fluctuation due to wide variations in the climate. These lakes may overtop their basins on rare occasions.) Under this paragraph Q.2, we will pay your claim as if the building is a total loss even though it has not been continuously inundated for 90 days, subject to the following conditions:

a. Lake floodwaters must damage or imminently threaten to damage your building.

b. Before approval of your claim, you must:

   (1) Agree to a claim payment that reflects your buying back the salvage on a negotiated basis; *and*

   (2) Grant the conservation easement contained in FEMA's "Policy Guidance for Closed Basin Lakes," to be recorded in the office of the local recorder of deeds. FEMA, in consultation with the community in which the property is located, will identify on a map an area or areas of special consideration (ASC) in which there is a potential for flood damage from continuous lake flooding. FEMA will give the community the agreed-upon map showing the ASC. This easement will only apply to that portion of the property in the ASC. It will allow certain agricultural and recreational uses of the land. The only structures that it will allow on any portion of the property within the ASC are certain simple agricultural and recreational structures. If any of these allowable structures are insurable buildings under the NFIP and are insured under the NFIP, they will not be eligible for the benefits of this paragraph Q.2. If a U.S. Army Corps of Engineers certified flood control project or otherwise certified flood control project later protects the property, FEMA will, upon request, amend the ASC to remove areas protected by those projects. The restrictions of the easement will then no longer apply to any portion of the property removed from the ASC; *and*

   (3) Comply with paragraphs Q.1.a through Q.1.d above.

c. Within 90 days of approval of your claim, you must move your building to a new location out-

side the ASC. FEMA will give you an additional 30 days to move if you show there is sufficient reason to extend the time.

d. Before the final payment of your claim, you must acquire an elevation certificate and a floodplain development permit from the local floodplain administrator for the new location of your building.

e. Before the approval of your claim, the community having jurisdiction over your building must:

(1) Adopt a permanent land use ordinance, or a temporary moratorium for a period not to exceed 6 months to be followed immediately by a permanent land use ordinance, that is consistent with the provisions specified in the easement required in paragraph Q.2.b above;

(2) Agree to declare and report any violations of this ordinance to FEMA so that under Section 1316 of the National Flood Insurance Act of 1968, as amended, flood insurance to the building can be denied; *and*

(3) Agree to maintain as deed-restricted, for purposes compatible with open space or agricultural or recreational use only, any affected property the community acquires an interest in. These deed restrictions must be consistent with the provisions of paragraph Q.2.b above, except that even if a certified project protects the property, the land use restrictions continue to apply if the property was acquired under the Hazard Mitigation Grant Program or the Flood Mitigation Assistance Program. If a non-profit land trust organization receives the property as a donation, that organization must maintain the property as deed-restricted, consistent with the provisions of paragraph Q.2.b above.

f. Before the approval of your claim, the affected State must take all action set forth in FEMA's "Policy Guidance for Closed Basin Lakes."

g. You must have NFIP flood insurance coverage continuously in effect from a date established by FEMA until you file a claim

under this paragraph Q.2. If a subsequent owner buys NFIP insurance that goes into effect within 60 days of the date of transfer of title, any gap in coverage during that 60-day period will not be a violation of this continuous coverage requirement. For the purpose of honoring a claim under this paragraph Q.2, we will not consider to be in effect any increased coverage that became effective after the date established by FEMA. The exception to this is any increased coverage in the amount suggested by your insurer as an inflation adjustment.

**h. This paragraph Q.2 will be in effect for a community when the FEMA Regional Administrator for the affected region provides to the community, in writing, the following:**

**(1) Confirmation that the community and the State are in compliance with the conditions in paragraphs Q2.e and Q.2.f above, *and***

**(2) The date by which you must have flood insurance in effect.**

**R. Loss Settlement**

1. **Introduction**

   This policy provides three methods of settling losses: Replacement Cost, Special Loss Settlement, and Actual Cash Value. Each method is used for a different type of property, as explained in a–c below.

   **a. Replacement Cost Loss, Settlement described in R.2 below applies to buildings other than manufactured homes or travel trailers.**

   b. **Special Loss Settlement,** described in R.3 below applies to a residential condominium building that is a travel trailer or a manufactured home.

   c. **Actual Cash Value loss settlement** applies to all other property insured under this policy, as outlined in R.4. below.

2. **Replacement Cost Loss Settlement**

   a. We will pay to repair or replace a damaged or destroyed building, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

      (1) The amount of insurance in this policy that applies to the building;

      (2) The replacement cost of that part of the building damaged, with materials of like kind and quality, and for like occupancy and use; *or*

      (3) (The necessary amount actually spent to repair or replace the damaged part of the building for like occupancy and use.

   b. We will not be liable for any loss on a Replacement Cost Coverage basis unless and until actual repair or replacement of the damaged building or parts thereof, is completed.

   c. If a building is rebuilt at a location other than the described location, we will pay no more than it would have cost to repair or rebuild at the described location, subject to all other terms of Replacement Cost Loss Settlement.

3. **Special Loss Settlement**

   a. The following loss settlement conditions apply to a residential condominium building that is:

      (1) a manufactured home or travel trailer, as defined in II.C.6.b and c, *and*

(2) at least 16 feet wide when fully assembled and has at least 600 square feet within its perimeter walls when fully assembled.

b. If such a building is totally destroyed or damaged to such an extent that, in our judgment, it is not economically feasible to repair, at least to its pre-damaged condition, we will, at our discretion, pay the least of the following amounts:

(1) The lesser of the replacement cost of the manufactured home or travel trailer or 1.5 times the actual cash value; or

(2) The Building Limit of liability shown on your Declarations Page.

c. If such a manufactured home or travel trailer is partially damaged and, in our judgment, it is economically feasible to repair it to its pre-damaged condition, we will settle the loss according to the Replacement Cost Loss Settlement conditions in R.2 above.

**4. Actual Cash Value Loss Settlement**

a. The types of property noted below are subject to actual cash value loss settlement:

(1) Personal property;

(2) Insured property abandoned after a loss and that remains as debris at the described location;

(3) Outside antennas and aerials, awning, and other outdoor equipment;

(4) Carpeting and pads;

(5) Appliances; *and*

(6) A manufactured home or mobile home or a travel trailer as defined in II.C.6.b or c that does not meet the conditions for special loss settlement in R.3 above.

b. We will pay the least of the following amounts:

(1) The applicable amount of insurance under this policy;

(2) The actual cash value, as defined in II.C.2; *or*

(3) The amount it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss.

## IX. POLICY NULLIFICATION, CANCELLATION, AND NON-RENEWAL

**A. Policy Nullification for Fraud, Misrepresentation, or Making False Statements**

1. With respect to all insureds under this policy, this policy is void and has no legal force and effect if at any time, before or after a loss, you or any other insured or your agent have, with respect to this policy or any other NFIP insurance:

a. Concealed or misrepresented any material fact or circumstance;

b. Engaged in fraudulent conduct; *or*

c. Made false statements.

2. Policies voided under A.1 cannot be renewed or replaced by a new NFIP policy.

3. Policies are void as of the date the acts described in A.1.above were committed.

4. Fines, civil penalties, and imprisonment under applicable Federal laws may also apply to the acts of fraud or concealment described above.

**B. Policy Nullification for Reasons Other Than Fraud**

1. This policy is void from its inception, and has no legal force or effect, if:

a. The property listed on the application is located in a community that was not participating in the NFIP on this policy's inception date and did not join or reenter the program during the policy term and before the loss occurred;

b. The property listed on the application is otherwise not eligible for coverage under the NFIP at the time of the initial application;

c. You never had an insurable interest in the property listed on the application;

d. You provided an agent with an application and payment, but the payment did not clear; *or*

e. We receive notice from you, prior to the policy effective date, that you have determined not to take the policy and you are not subject a requirement to obtain and maintain flood insurance pursuant to any statute, regulation, or contract.

2. In such cases, you will be entitled to a full refund of all premium, fees, and surcharges received. However, if a claim was paid for a policy that is void, the claim payment must be returned to FEMA or offset from the premiums to be refunded before the refund will be processed.

**C. Cancellation of the Policy by You**

1. You may cancel this policy in accordance with the terms and conditions of this policy and the applicable rules and regulations of the NFIP.

2. If you cancel this policy, you may be entitled to a full or partial refund of premium, surcharges, or fees under the terms and conditions of this policy and the applicable rules and regulations of the NFIP.

**D. Cancellation of the Policy by Us**

1. **Cancellation for Underpayment of Amounts Owed on This Policy.** This policy will be cancelled, pursuant to VIII.D.2, if it is determined that the premium amount you paid is not sufficient to buy any amount of coverage, and you do not pay the additional amount of premium owed to increase the coverage to the originally requested amount within the required time period.

2. **Cancellation Due to Lack of an Insurable Interest.**

a. If you no longer have an insurable interest in the insured property, we will cancel this policy. You will cease to have an insurable interest if:

(1) For building coverage, the building was sold, destroyed, or removed.

(2) For contents coverage, the contents were sold or transferred ownership,

or the contents were completely removed from the described location.

b. If your policy is cancelled for this reason, you may be entitled to a partial refund of premium under the applicable rules and regulations of the NFIP.

### 3. Cancellation of Duplicate Policies.

a. Except as allowed under Article I.F, your property may not be insured by more than one NFIP policy, and payment for damages to your property will only be made under one policy.

b. Except as allowed under Article I.G, if the property is insured by more than one NFIP policy, we will cancel all but one of the policies. The policy, or policies, will be selected for cancellation in accordance with 44 CFR 62.5 and the applicable rules and guidance of the NFIP.

c. If this policy is cancelled pursuant to VIII.D.3.a, you may

be entitled to a full or partial refund of premium, surcharges, or fees under the terms and conditions of this policy and the applicable rules and regulations of the NFIP.

### 4. Cancellation Due to Physical Alteration of Property

a. If the insured building has been physically altered in such a manner that it is no longer eligible for flood insurance coverage, we will cancel this policy.

b. If your policy is cancelled for this reason, you may be entitled to a partial refund of premium under the terms and conditions of this policy and the applicable rules and regulations of the NFIP.

### E. Non-Renewal of the Policy by Us

Your policy will not be renewed if:

1. The community where your insured property is located is suspended or stops participating in the NFIP;

2. Your building is otherwise ineligible for flood insurance under the Act;

3. You have failed to provide the information we requested for the purpose of rating the policy within the required deadline.

---

## X. LIBERALIZATION CLAUSE

---

If we make a change that broadens your coverage under this edition of our policy, but does not require any additional premium, then that change will automatically apply to your insurance as of the date we implement the change, provided that this implementation date falls within 60 days before or during the policy term stated on the Declarations Page.

## XI. WHAT LAW GOVERNS

This policy and all disputes arising from the insurer's policy issuance, policy administration, or the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, et seq.), and Federal common law.

In Witness Whereof, we have signed this policy below and hereby enter into this Insurance Agreement.

Deputy Associate Administrator
Federal Insurance and Mitigation Administration



**THE HARTFORD**
BROWN & BROWN OF FLORIDA INC
PO BOX 745870
ATLANTA, GA 30374

May 29, 2024

THE BEACHMOOR CONDOMINIUM OWNERS ASSOCIATION INC
1900 NW CORPORATE BLVD, SUITE E205
C/O REISING LAW, P.A.
BOCA RATON, FL 33431

Policy Number:     87046220402019
Insured Name:     THE BEACHMOOR CONDOMINIUM OWNERS ASSOCIATION INC
Property Location: 9051 GULF SHORE DR
                   NAPLES, FL 341082337

Date of Loss:      9/28/2022

Dear THE BEACHMOOR CONDOMINIUM OWNERS ASSOCIATION INC :

Your completed covered flood claim breakdown:

|                          | Building       | Contents    |
|--------------------------|----------------|-------------|
| Damage Actual Cost       | $1,113,597.99  | $0.00       |
| Less Deductible          | $25,000.00     | $25,000.00  |
| Less Prior Payments      | $1,103,897.65  | $0.00       |
| Recoverable Depreciation | $182,550.51    |             |
| Net Claim Payable        | $167,250.85    | $0.00       |

*Claim payment(s) are mailed separately.*

We received your Final Report on your flood claim listed above. The flood damage covered by the Standard Flood Insurance Policy (SFIP) appears to be correctly detailed in the adjuster's estimates received May 21, 2024, from Advanced Adjusting Ltd.

We recommend you keep in a safe place, out of the reach of future flooding, all repair receipts and invoices documenting the completion of the building repairs, and if applicable, the repair / replacement of your personal property. Thus, in the event you are flooded again, the adjuster will be better able to verify that the building repairs were completed, and if applicable, the age, condition, and value of the personal property. This will greatly expedite the handling of any future flood claims.

The adjuster tells us there was no direct damage by flood for the center elevator lobby and hallway, replacing tile flooring in bathroom, lobby, mail room, hallway, hall closet, reception room, lights, outlets, and switches in hallway and hall closet, specialty labor minimum, and build permits. Therefore, the Standard Flood Insurance Policy (SFIP) will not allow us to issue payment and your claim has been denied for these items. Please review Article I. Agreement.

*I. AGREEMENT*

**EXHIBIT**

tabbies*    *B*

*The Company provides flood insurance under the terms of the National Flood Insurance Act of 1968 and its amendments, and Title 44 of the Code of Federal Regulations (CFR). We will pay you for **direct physical loss by or from flood to your insured property**...*

The adjuster has advised that you are claiming coverage for the incurred costs for a permit. The SFIP will not allow payment for these items because they are not covered.

**V. EXCLUSIONS**...

*A. We only provide coverage for **direct physical loss by or from flood**, which means that we do not pay you for:*

*6. The cost of complying with any ordinance or law requiring or regulating the construction, demolition, remodeling, renovation, or repair of property, including removal of any resulting debris. This exclusion does not apply to any eligible activities that we describe in Coverage D – Increased Cost of Compliance; or*

*7. Any other economic loss.*

The adjuster has advised that you are claiming damage to the exterior generator, trees, shrubs, lawn, and debris removal from lawn, front carport, exterior block wall for pool, inground pool and pool equipment, located on your property. The SFIP will not allow payment for these items because they are not covered.

*IV. PROPERTY NOT COVERED...*

We do not cover any of the following property:

**1.** Personal property not inside the fully enclosed building;

**6.** Land, land values, lawns, trees, shrubs, plants, growing crops, or animals;

**9.** Those portions of walks, walkways, decks, driveways, patios, and other surfaces, all whether protected by a roof or not, located outside the perimeter, exterior walls of the insured building or the building in which the insured unit is located;

**12.** Fences, retaining walls, seawalls, bulkheads, wharves, piers, bridges, and docks;

**14.** Hot tubs and spas that are not bathroom fixtures, and swimming pools, and their equipment such as, but not limited to, heaters, filters, pumps, and pipes, wherever located;

The adjuster tells us that you haven't provided the signed agreement and line-itemized estimate from the contractor that will be performing the repairs, and the contents list needs to have photos supporting the content item in place and damaged by flood waters at the time of loss. We wish to remind you that the flood policy requires that you provide us with documentation of flood damaged items and costs and a signed Proof of Loss.

**VII. GENERAL CONDITIONS**...

**G. Requirements in Case of Loss**...

*In case of a flood loss to insured property, you must:*

*1.Give prompt written notice to us;*

*2.As soon as reasonably possible, separate the damaged and undamaged property, putting it in the best possible order so that we may examine it;*

*3.Prepare an inventory of the damaged property showing the quantity, description, actual cash value, and amount of loss. Attach all bills, receipts, and related documents;*

*4.Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information:*

*a. The date and time of loss;*

*b. A brief explanation of how the loss happened;*

*c. Your interest (for example, "owner") and the interest, if any, of others in the damaged property;*

*d. Details of any other insurance that may cover the loss;*

*e. Changes in title or occupancy of the covered property during the term of the policy;*

*f. Specifications of damaged buildings and detailed repair estimates;*

*g. Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;*

*h. Details about who occupied any insured building at the time of loss and for what purpose; and*

*i. The inventory of damaged personal property described in J.3. above.*

*5. In completing the proof of loss, you must use your own judgment concerning the amount of loss and justify that amount.*

*6. You must cooperate with the adjuster or representative in the investigation of the claim.*

*7. The insurance adjuster whom we hire to investigate your claim may furnish you with a proof of loss form, and she or he may help you complete it. However, this is a matter of courtesy only, and you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it.*

*8. We have not authorized the adjuster to approve or disapprove claims or to tell you whether we will approve your claim.*

*9. At our option, we may accept the adjuster's report of the loss instead of your proof of loss. The adjuster's report will include information about your loss and the damages you sustained. You must sign the adjuster's report. At our option, we may require you to swear to the report.*

**H. Our Options After a Loss...**

*Options we may, in our sole discretion, exercise after loss include the following:*

*1. At such reasonable times and places that we may designate, you must:*

*a. Show us or our representative the damaged property;*

*b. Submit to examination under oath, while not in the presence of another insured, and sign the same; and*

*c. Permit us to examine and make extracts and copies of:*

*(1) Any policies of property insurance insuring you against loss and the deed establishing your ownership of the insured real property;*

*(2) Condominium association documents including the Declarations of the condominium, its Articles of Association or Incorporation, Bylaws, rules and regulations, and other relevant documents if you are a unit owner in a condominium building; and*

*(3) All books of accounts, bills, invoices and other vouchers, or certified copies pertaining to the damaged property if the originals are lost.*

*2. We may request, in writing, that you furnish us with a complete inventory of the lost, damaged or destroyed property, including:*

*a. Quantities and costs;*

*b. Actual cash values or replacement cost (whichever is appropriate);*

*c. Amounts of loss claimed;*

*d. Any written plans and specifications for repair of the damaged property that you can reasonably make available to us; and*

*e. Evidence that prior flood damage has been repaired.*

*3. If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may:*

*a. Repair, rebuild, or replace any part of the lost, damaged, or destroyed property with material or property of like kind and quality or its functional equivalent; and*

*b. Take all or any part of the damaged property at the value that we agree upon or its appraised value.*

Because you submitted a signed Proof of Loss with your request for additional payment but the documentation submitted of the signed agreement and line-itemized estimate from the contractor that will be performing the repairs, and the contents list needs to have photos supporting the content item in place and damaged, we have closed your request without payment based on your failure to pursue the claim for the items requested. If you intend to pursue the request for the items listed in the estimate, please provide a signed Proof of Loss and line-item estimate of the actual repair cost and we will re-evaluate your claim for these items.

The Standard Flood Insurance Policy is a Federal Policy under the Jurisdiction of the Federal Government issued pursuant to the National Flood Insurance Act of 1968 and applicable federal regulations in Title 44 of the Code of Federal Regulations, Subchapter B.

If you do not agree with our decision to deny your claim or any part of the claim, Federal law allows you to appeal that decision within 60 days of the date of this denial letter. Your appeal must be in writing and include: a copy of this letter, a copy of the completed Proof of Loss form you submitted to the insurer, your written statement of the basis for the appeal in as much detail as possible including relevant policy and claim information, and all the documentation that supports your written statement.

The appeal must be sent to:

Federal Emergency Management Agency
Mitigation Directorate
Federal Insurance Administrator
1800 South Bell Street
Arlington, VA 20598-3010

To avoid delays, it is critical that you use the complete ZIP + 4 Code given above. You may not appeal if your dispute is or has been subject to appraisal or you have filed suit on the matter(s) upon which the insurer's denial of your claim or any part thereof is based.

Enclosed: Policyholder Rights

Sincerely,

Greg Huffman
Senior Claims Examiner
Hartford Fire Insurance Company
Flood Claims Department

cc    BROWN & BROWN OF FLORIDA INC
       Pilot Catastrophe

# Policyholder Rights

*You have options if your flood insurer denies your claim*



We understand that the claims process is not always an easy one, but we are here to support you. If you do not agree with your insurer's decision to deny your claim and you receive a full or partial claim denial letter from your insurer, you have several options:



**Work with your insurer.** We encourage you to first talk to your adjuster or insurer for any specific questions about your claim. Your adjuster can answer general questions and assist you in proving your loss. Your insurer can address specific questions and make final decisions about your claim. If you need to correct or add to any previously submitted proof of loss, you can submit an amended proof of loss directly to your insurer. You must sign and swear to an amended proof of loss and include documentation to support your loss and the dollar amount requested.



**File an appeal.** You may file a flood insurance appeal directly to us at FEMA, the Federal agency that oversees the National Flood Insurance Program (NFIP). On appeal, FEMA will work with you and your insurer to gather the claim facts, review the applicable guidance, policy terms and conditions, and provide an appeal decision that explains why FEMA is upholding or overturning the decision.

- To file an appeal, you must explain the issue(s) in writing, include a copy of the denial letter from your insurer, and provide any supporting documentation.
- There is no fee to file an appeal and you do not need a third party to represent you. If you have a third party represent you, FEMA will not pay for any costs incurred for representation. By law, FEMA cannot discuss your claim with a third party representative unless you provide certain information in writing. Please see "Authorize Someone Else to Represent You" at https://www.fema.gov/flood-claim-appeals-and-guidance for additional information.
- You must file your appeal within 60 days of the date of the insurer's denial letter by sending it to FEMA, 400 C Street SW, 3rd Floor SW, Washington, D.C. 20472-3010, or FEMA-NFIP-Appeals@fema.dhs.gov. **FEMA will receive and begin processing emailed appeals more quickly than those sent via U.S. mail or express carrier.** Please note that due to cybersecurity requirements, FEMA cannot access file sharing sites, CDs, DVDs, or any electronic storage devices.
- If you appeal, you can later choose to file suit against your insurer as long as you are still within the one-year timeframe available to file suit, but you can no longer seek appraisal.



**File a lawsuit.** Federal law permits you to file suit in the Federal District Court where the damage occurred within one year of when your insurer first denied all or part of your claim.

- You must file suit against your insurer. If the NFIP Direct is your insurer, you may file suit against FEMA. For all other flood insurers, you may not file suit against FEMA.
- Filing an appeal does not extend the one-year timeframe to file suit against your insurer.
- Prior to or after filing a lawsuit, you may want to invoke the appraisal provision of the Standard Flood Insurance Policy. Appraisal is a viable alternative to a lawsuit when the only dispute between you and your insurer involves the price to be paid for a covered flood-damaged item.
- After filing an appeal to FEMA, you may still file suit against your insurer, but once you initiate litigation you can no longer file an appeal.

*Additional Information.* For more information about the flood insurance claims process, please see the NFIP Flood Claims Process Fact Sheet or the NFIP Flood Insurance Claims Handbook both found electronically on FEMA.gov.